Next case is Gomez v. United States. Good morning, your honors. I'm Richard Levitt. I represent Mr. LaLama Gomez. He appeals from the denial of his habeas corpus petition, which sought to contest the order of extradition that was entered by the magistrate judge. Out of respect for the family, I'd like to note their presence in the courtroom today. We've raised three issues on appeal, your honor, whether or not he has sought for an extraditable offense in Ecuador. The second and related issue is whether or not Mr. LaLama was denied the opportunity to present evidence from his expert witness. And the third issue concerns whether or not there should be an exception to the rule of non-inquiry. I'll start with the first two issues, your honor. As the court knows, the crime for which Mr. LaLama is wanted in Ecuador, sexual abuse, is not a crime for which extradition is authorized under the treaty between the United States and Ecuador. Haven't both the State Department and the National Court of Justice in Ecuador taken the position that it is within the scope of the treaty? Well, they have. That's certainly true. And so help me understand what, if any, deference we owe to that determination. I think that it's certainly something that should be considered seriously, but there's no case law of which I'm aware that says it's preclusive. And if it were preclusive, then obviously we would never have these habeas petitions to begin with. Because one of the primary issues raised in these cases is whether or not the defendant is wanted for an extraditable crime. And if we couldn't challenge the position of the requesting and the requested states, there'd be no issue there. But I do agree with your honor that it certainly is entitled to some weight. And that was one of the reasons why we offered to present the testimony. Well, I think we must, perhaps in extraordinary contrary evidence, defer to the interpretation of the court. Well, I think there is extraordinary contrary evidence. If that's what's required, Judge, I don't think there's any... I'm quoting the Supreme Court. There's no question, though, that there is extraordinary and compelling evidence that it is not an extraditable offense. And the reason it's not is because in order for an offense that's not listed in the treaty to be an extraditable offense, it must be the equivalent of a crime that is in the treaty. And in making that determination, the question, of course, is whether or not the facts that would be used to support the charged offense makes out the equivalent of a offense that's in the treaty. In this case, rape. Well, we know that it doesn't. We know that those facts do not. Because the facts that support the claim or the charge of sexual abuse as a matter of law do not include the claim of penetration. But this is where you seem to have shifted from what you argued below and what you're arguing in your reply brief. Because you seem to have moved to this elements. It's almost like the categorical approach in your reply brief. But in your opening brief, and certainly below, you're arguing that, no, the courts should be looking at the underlying conduct, in other words, what's in the submissions, to see whether that evidence would support the elements of, in this case, the rape charge, right? Well, whether or not, I don't think we're shifting our position. I think that we're highlighting the fact that, without any doubt, the question is whether or not the facts that make out the crime of extradition is the equivalent. Because otherwise, it wouldn't make any sense. The country of Ecuador is seeking to try him for a particular crime. The question is whether or not that particular crime, including facts, all of the facts that they'll consider, is the equivalent of a crime that's listed in the extradition treaty. That crime is rape. Well, which is it? Is it the underlying facts or is it the statutory definition? Well, I think it's two things. It's the statutory definition, and it's the facts that will be used to prove that he satisfied the elements of the definition. In the request for extradition I mean, am I missing something? You didn't argue this categorical approach below. Cus Cadiz, if I'm pronouncing it right, which is a district court case from Massachusetts, but that they took this approach, right? Whether the crimes charged has the same essential elements. And I didn't see that as the principal basis of your argument below. You were arguing simply that the submissions made by the requesting country didn't meet the standards for rape, which required penetration. Well, it didn't meet the standards of equivalency. I mean, respectfully, I don't think that this court can ignore the fact that they are not equivalent crimes, even when you consider the facts that will be used to prove them. In this case, the request for extradition said as follows. It defined the crime for which extradition is being sought. It said sexual abuse. This is Article 170. It's at page 115 of the appendix. Sexual abuse, the person who, against the will of another, executes on her or forces her to execute on herself or another person an act of a sexual nature without there being penetration or carnal access. No, I agree. You're, again, focusing on the distinct elements of sexual abuse and rape under Ecuadorian law. But it seems to me that the law here is pretty clear that there doesn't have to be a mirror image requirement. There doesn't have to be a mirror image between the charged offense and the listed offense in the treaty. No, but there has to be equivalency. And in looking at the equivalency between the charged offense and the offense in the treaty, you can look at the facts that will be used to establish the offense. What's the basis? You say that, but what's the basis? Did Eddie Cage say that? Sure. In both our initial brief and in our reply brief, we quote the general rule, which there has to be equivalency between the crime for which he's wanted and the crime that's on the list. And in doing so, determining the equivalency between the two crimes, you the expert who was precluded from testifying would have said that the issue of penetration would not even be relevant at the trial of this case. But even assuming, Your Honors, even assuming that we only focus on the allegations themselves, the court in Ecuador has already determined that there is no competent evidence of penetration. There's no competent evidence. So even if you focus solely on the evidence in the record and you don't ask yourself whether or not that evidence can be used to establish the charged offense of sexual abuse, you must conclude, because the court concluded, that there's no competent evidence of penetration. It doesn't exist. There was a claim by the mother of penetration, but the court said that's incompetent evidence. That can't be used. Excuse me? Well, I think Judge Sullivan was asking whether or not we, in determining equivalency, we can look at the facts that are underlying, that have been alleged against Mr. LaLama. And the facts alleged against Mr. LaLama, as found by the court in Ecuador, does not include penetration. But what case says we look at those facts? Well, that's what, that's the government's argument here. The government's argument Is there a case that says you look at the underlying facts, not just the terms of the statute? Sure. I mean, that's how you can find equivalency between Is there a case that says so? I believe that there are numerous cases. Judge Ammon cited them. We cited them. The government cited them. But they're mostly district court cases. Do you agree with that? Excuse me? These are mostly district court cases. Well, if we don't look at the facts, then there's no issue here, I would think. No, I'm saying in terms of authority. Judge Newman asked you about the authority. Are there cases? It seemed to me that most of the cases cited by the parties and most of the cases cited by the court were district court cases, not Second Circuit cases. Well, that's true, but I'm not really sure where that takes us because there's no equivalent if you look at the elements. If you look only at the elements, it's clearly not the equivalent of rape. But going beyond that, under Ecuadorian law, they are completely separate and mutually exclusive crimes because the courts in Ecuador say if there is penetration, you charge rape. If there is not penetration, you charge sexual abuse. They can't possibly be considered equivalent where under Ecuadorian law, they are distinct and they're mutually exclusive. So how could they be equivalent? And most respectfully, the court should not be saying that, well, even looking at just the elements, they're equivalent because one requires penetration and one, by definition, is the absence of penetration. So how could they possibly be equivalent? May I briefly address the second issue? Or the third issue, I should say. Do you want to use some of that now or reserve it? Well, I'm sure that the government will probably want to rebut my argument with regard to the third point, so I would ask for a little additional time to do that. Okay, so why don't you take a minute now? Okay, thank you, Your Honor. With regard to whether or not there should be an exception to the rule of non-inquiry, when this court decided amat, we now know they certainly did not foreclose the possibility of an exception as was stated in the Galena Dicta. And we know that because this court said so in footnote eight of Kapor. And we also know from Judge Haidt's very persuasive discussion of the issue and his reliance on Supreme Court precedent that Justice Souter has said very clearly in his concurrence, said that indeed there should be an exception under unusual circumstances. And Justice, and the Chief Judge in his decision in that case, did not question Judge Souter's statement that there should be an exception under extreme circumstances. When amat was decided in 1990, and Your Honor, Judge Newman was on the amat panel along with Judge Van Griffen and I think And the court had good reason to say that it was unaware of any instance where in fact our government has extradited a person to where he might be harmed, where there's a grave risk of harm. But we now know that this is not 1990. You know, in 2025, we know that hundreds of people have been deported to El Salvador without, to one, most infamous prisons in the world without due process. We know that the government is now thinking of sending deportees to Libya. We know from last week that the executive said we may suspend habeas corpus on behalf of migrants. Things are different. We presented a huge amount of information below and to this court, which suggests that in fact he's at grave risk. He's at grave risk not only because our state department says that the prisons in Ecuador are essentially a hell hole. But human rights investigations have also said that. Hundreds of people have been murdered in the last few years in Ecuadorian prisons. And the irony here, Your Honors, the irony is that if the shoe were on the other foot, if this were Ecuador receiving our request to extradite Mr. LaLama, they would say no. They would refuse it because he's a dual citizen of the United States and Ecuador. So if we asked for him, they would say no. But that's the whole point, is that generally the executives can work this out. It's not typically courts that do this. And in fact, we've never done this, right? I agree with Your Honor 100%. So you're going to make all these arguments that you're making now to the government. And maybe you already have. But I'm not sure why it is that courts get to do this because of some stray language in cases that are now 50 or 60 years old. No, the court may know that last Friday, because we supplemented the record, the state department said, we're extraditing him. So the question then becomes whether or not we should have at least had the opportunity to make the due process argument that this court should not be complicit in sending this man to Ecuador, where there is a grave risk that he will be killed or denied medical care. The government's position is that you have to act as a rubber stamp, that you can't do anything. As long as the papers are in order, this court can do nothing other than sign the extradition order or affirm the granting of the extradition order. And most respectfully, Mr. Lallama, whether he's a United States citizen or not, and he is a United States citizen, is entitled to substantive due process, as Judge Souter said. And we have presented grave evidence that he's in danger. And this court should not be a rubber stamp upon that in this day and age. Thank you. We'll hear from your adversary.  Good morning, Your Honors. May it please the Court. My name is Rebecca Urquiola, and I'm an assistant United States attorney in the Eastern District of New York, and I represent the United States in this appeal. The district court's denial of the petitioner's habeas motion should be affirmed for the following reasons. The first is that under a liberal interpretation of the United States-Ecuador Treaty, the crime of sexual abuse is encompassed as an extraditable offense. The second is that Judge Eskenazi found that there existed probable cause that the petitioner committed the crime of sexual abuse in Ecuador. The third is that Judge Eskenazi was well within her right to preclude the petitioner's proposed expert testimony at the extradition hearing. And lastly, this court is barred from reviewing any humanitarian considerations presented by the petitioner. As to whether the crime of sexual abuse is encompassed under the treaty, the standard of review is very clear here. Under the Fernandez factors, this court is reviewing whether the magistrate judge had jurisdiction, whether the offense was charged under the treaty, and whether there was any evidence warranting a finding that there was reasonable ground to believe the accused guilty. And here, Judge Eskenazi performed the required test. She looked at the underlying conduct, which the case that supports that is in re-extradition, Handovec, and the site is 829F2D979, and that's a District of Oregon case, which says we're not. So you are conceding, because this is what I had come to conclude after looking at your briefing and your adversary's briefing. So we haven't yet addressed, we have not addressed the issue. There is no circuit authority on the question whether we can consider the underlying conduct in determining whether the offense is extraditable. Well, Your Honor, the Supreme Court made clear in Factor v. Lobenheimer that we're applying a liberal interpretation of the treaty, and under that interpretation, we're looking to the intent of the diplomatic parties to the treaty, and it's very clear here that the State Department said that the crime of sexual abuse is encompassed under Article II, Item 2nd of the treaty, and that's afforded great deference. And even though this Court may not have been presented with this exact issue, the District of New Jersey just last year was presented with this issue in Cordero-Rosbalo v. the United States. And there, there was a citizen of Ecuador that was also tried with sexual abuse for conduct very similar to the conduct that the petitioner committed here, and there the Court found that there was, in fact, under a liberal interpretation of the treaty and looking at the underlying conduct, that the petitioner was extraditable. The New Jersey case is really different than this one, right? That was about dual criminality, which is frequently an inquiry in these cases, but that's not really the issue here, right? Your Honor, we don't need to get to the dual criminality question. Well, I don't think there's any dispute about dual criminality here, is there? Well, the petitioner did raise the issue of dual criminality in his reply brief, but the government is clear that we don't need to get to the issue of dual criminality here because, again, the conduct is very clearly encompassed under the extradition treaty. But just comparing the facts, as Judge Eskenazi did in the extradition hearing, to the facts presented in our case, there the petitioner was charged with sexual abuse, but the underlying conduct resembled the underlying conduct here to the extent that the District of New Jersey found that the petitioner was extraditable. You started with the equivalence of the statutes, and then you talked about the underlying conduct. So are you saying we do look at the underlying conduct? We're looking at the underlying conduct, and the case law is clear that we do not need to do a word-for-word comparison between the statute with which the petitioner is charged in Ecuador and the language in the treaty. The case law is clear that we do not need to perform that analysis. The case law of this circuit? The case law in Sumitomo-Shoei v. Avigliano and Factor v. Lobenheimer clearly says that we do not need to do a word-for-word comparison. Of the statutes? Of the statutes, correct. All right, so let's say we were to agree with you that far, that not making a word-for-word comparison, we think the statute is equivalent. Do we then look at the underlying conduct to see whether it is equivalent to the Ecuadorian crime? We're looking at the underlying conduct to see whether or not it falls under the language of the treaty, and here the treaty is from 1872. It's possible that they didn't consider the crime of sexual abuse to be encompassed under the rape provision then, but here the law has evolved as such that it's possible that the underlying conduct here committed by the petitioner did fall under the rape provision. You say it's possible? It's possible that it does? Well, it does. Sorry, Your Honor. It does because both the United States and Ecuador as treaty partners interpreted it as such, and that's afforded deference here. They interpreted the statutes or the underlying conduct? They interpreted the treaty to mean that it covered the underlying conduct performed by the petitioner. Well, your adversary says the underlying conduct lacks penetration. And our adversary respectfully is incorrect on that point because Ecuador submitted over 200 pages which included an affidavit from the victim, the victim's mother, a psychological report, and the court's own interpretation of the evidence which deemed that there was penetration in this case. It's irrelevant whether or not Ecuador decided to charge the crime of rape. That's prosecutorial discretion, and that's not up for us to determine whether or not it was right or wrong. Your point is we first look at the equivalence of the statutes. We then look at the evidence, and in this case, according to your argument, the evidence shows equivalence. Your Honor, we believe that we don't even have to get to the equivalence of the statutes here. We don't get to it? Isn't that where we start? In this case, Your Honor, there's no need to do a dual criminality analysis because the courts already, both Judge Eskenazi and Judge Ammon, decided that the underlying conduct itself was sufficiently equivalent to that encompassed under the treaty, under Article 2, Item 2 of rape. Regardless of what the statute, what the offense was? Correct. Regardless of what the statute claims that the petitioner did. We're looking at the underlying conduct. So you're saying we look only at the underlying conduct? Correct. The underlying conduct and the party's intent. And here, it's very clear that both the United States and Ecuador intended for the petitioner's underlying conduct to be encompassed under Article 2, Item 2 of the treaty. So I just want to be clear on this. If they charged him with jaywalking but added in their submission all the facts that are here now related to penetration and rape, that would be sufficient to treat the jaywalking allegation as covered by the treaty? No, Your Honor, because again, what Judge Eskenazi did was reviewed the entire record and determined that there was sufficient probable cause that the petitioner committed the underlying offense. The underlying offense being the treaty-listed offense of rape or the underlying offense of sexual abuse? The underlying offense of sexual abuse. And then she performed the analysis, which meant that the crime of sexual abuse is encompassed under a liberal interpretation of the Ecuador-United States treaty. Right, but only by looking at the conduct alleged, right? Correct. So there is some tension here, I guess. This is not the way we would normally do this, but it's often the way we've done it for treaties. We look at the conduct because we don't really trust the labels that different countries give to different crimes. Is that right? That's correct, Your Honor. And so here the government's argument is that the label sexual abuse, even though there's a distinct crime of rape in Ecuador, is sufficient to meet the term of rape that's covered in the treaty. That's correct, Your Honor, because it's not up for the magistrate court judge or the habeas court to determine whether or not the prosecutor was wrong in charging sexual abuse or rape. We're looking at the—we're giving deference to what the United States and Ecuador determined the conduct to encompass, and here it's very clear that the United States and Ecuador thought that the underlying conduct committed by the petitioner fell under the treaty. If we agree with all of what you've said, what is it you want this court to do? The government asked that this court affirm the denial of the petitioner's habeas petition, and as of last Friday, the secretary of state already determined that the petitioner— reviewed all of the humanitarian concerns presented by the petitioner and determined that the petitioner is extraditable. If we only affirm, is there nothing the district court needs to do to comply with the treaty? Once this court affirms, then the habeas court or the district court will lift the stay that's currently in place, and the petitioner will then be extradited back to Ecuador. You don't think you need a remand to accomplish that? The government does not believe so, Your Honor. Can I ask a question? Just affirming the denial of habeas does not end the case. It leaves the district court free to do something else. No, Your Honor. The district court already denied the habeas petition. Yeah, I understand that. And you're saying if we affirm that, the district court can then proceed to lift the stay? Correct. And do what? And then the certificate of extraditability is in place, and the next step is for the executive branch to take over. And we don't need to authorize the district court to do that? Judge Escanasa already did that, didn't she? She's already certified the extradition. This court can also order that the stay be lifted. Can or should? Should. Well, that's what I'm wondering, whether an affirmance actually does what you want. We believe so, Your Honor, but in order to be sure. You wouldn't mind a little more? I wouldn't mind it, no. Let me ask a question. You requested that the extradition take place prior to June, so that Mr. Gomez can be tried fairly in an Ecuadorian court prior to the expiration of the September 19, 2025 statute of limitations. That's correct, Your Honor. So I guess I'm trying to figure out what happens here. We would issue our decision, and then there would be time for a mandate to go, and then presumably there would be, if there were a motion, a petition for rehearing or a petition for cert, what's that going to do to this statute of limitations problem that you've identified? Your Honor, we would ask that we be on an expedited calendar in that case. Again, this is the date that was proposed by Ecuador, but, again, we would have to confer back with Ecuador to determine what would be the last possible date for the petitioner to be returned in order for him to have a fair hearing in Ecuador. Do the proceedings here toll the statute or not? No, Your Honor. And the delay was, there were three years before the matter was, after extradition was requested, before it was taken up by the executive? Correct, Your Honor. There were two requests from the court in Ecuador for the petitioner to be extradited, and then by the time it got to the State Department, I believe it took an additional year for the government to take this case to an extradition hearing. So the delay here is really attributable to the government more than anybody else? Well, Your Honor, the government acted fairly quickly after receiving the formal request from Ecuador. Well, I mean, it's been three years, right? But the government didn't have the case for three years. Rather, the request from Ecuador was... Linguished at the State Department. Is that what you're saying? Yes. So when you say the government, you mean the Department of Justice? You're pointing fingers for the delay towards the State Department? No, no, Your Honor. I'm not sure I'm understanding. Ecuador requested that the petitioner be brought back, I believe it was a year ago. And then because the lower court in Ecuador had requested the petitioner... 2021 is when Ecuador submitted the formal request for his extradition, right? But it wasn't submitted the formal request and then the State Department needed to review those submissions. Okay. But, I mean, there is other process that Mr. Gomez might be entitled to hear. I mean, it seems to me that you're going to need almost an immediate mandate in this case to meet the deadlines that you have in mind. Well, Your Honor, the Secretary of State has already performed its analysis that it has considered the humanitarian concerns. And that's an additional hurdle that would take some time. And because the Secretary of State... I'm talking about just court procedure. So ordinarily, right, we'll issue a ruling. There'll be time between our ruling and the mandate. And then there might be opportunities to seek a petition for rehearing here or in the Supreme Court. And I'm just not sure how that's all going to happen before September 19. Have you thought about that? Your Honor, should that happen, the government would again need to confer with the State Department and Ecuador to see what we would be able to do. And the government is happy to consult with the State Department and Ecuador and get back to this court on that question. I mean, it seems to me Mr. Gomez is also subject or potentially, I mean, for all the conduct alleged in the extradition package, he also would be liable for a violation of federal law, which makes it a crime for any U.S. citizen to travel in foreign commerce or reside in a foreign country and engage in sexual misconduct of this sort. This is Title 18 of the United States Code, Section 2423C. Is that right? That's correct, Your Honor, but the conduct occurred in Ecuador. Yeah, and the statute covers conduct that occurs in foreign countries. You're not aware of that? Yes, but the government is not aware that we would be pursuing additional charges against Mr. Lulama Gomez here in the United States. Well, my point is if you blow the extradition statute of limitations there, there's other relief that might be available for what seems like a serious crime. But that's not on the table here, I guess. All right. Thank you. Thank you, Your Honor. May I, Your Honor? Thank you. The court should know that the seven-year statute of limitations requires not only that he be tried within seven years, but that all the appellate remedies be concluded within the seven years or the statute runs. Your Honors were correct. The delay in this case is entirely, entirely because of the two governments. And now we're given the so-called bum's rush because they delayed everything for so long, and that's why everything now has to be rush, rush and expedited. But two points I'd like to make. The first is, although the government says that the facts, whether we look at the elements of the facts, and the court will decide that, the facts do not make out on any level the fact of penetration. The fact that somebody made the allegation — First of all, in an extradition package, hearsay is permitted. The court can consider hearsay, right? The Ecuadorian court has — I don't care about the Ecuadorian court. I'm talking about the U.S. court can consider hearsay to determine whether there's probable cause, right? It can consider hearsay if, in fact, if, in fact, there's some relevance to that point, and if, in fact, Ecuador, the requesting country, has not said exactly the contrary, which they've already said. They've already said the contrary. They've already said — I'm not sure I agree with your characterization of that, but it seems to me these are all arguments that Mr. Gomez gets to make in Ecuador in the equivalent of motions in Limine once he's there. This is an argument — But it's not the role of the district court. This is an argument which he should have been permitted to make here, and which he wasn't because he was wrongly denied the opportunity to present evidence from his expert. The court below said his expert couldn't testify because the expert would be contradicting the facts of the case, but that's not so. The expert would have been explaining the legal significance of the facts of the case, which he's permitted to do. That is one of the purposes of an expert. We string-sided numerous cases in our reply brief where experts have been permitted to testify specifically for that type of purpose. He was not contradicting a single fact that was alleged by Ecuador. He was only explaining the significance of those facts. There is no competent evidence in this record whatsoever of penetration. We know that it would not be used at the trial in this case in any event, and we also know that the crimes of sexual abuse and rape in Ecuador are mutually exclusive crimes, and for all those reasons, Your Honor, we ask that the court either find that, in fact, he was not charged with an extraditable offense, or that it remands this case for proper hearing so that he has an opportunity to prove as much with the assistance of his expert and that he also have an opportunity to show the court that the court should apply an exception to the rule of non-incorporation. Well, his expert can't help us as to whether there was penetration. Well, the expert can certainly help with regard to the significance of the Baer allegation, and although the mother— As to whether there was penetration, the expert cannot help us, correct? Whether or not in a—at a cosmic level, of course. He wasn't there. At a what level? He doesn't know. I'm not talking about a cosmic level. I'm talking about this case on the ground. Was there penetration? The government says there's evidence there was. Yes, and he would testify. He would testify. He would testify that there was no competent evidence, there's no evidence that can be considered in Ecuador of penetration. In fact, they made a contrary finding because if there were competent evidence of penetration, he would have been charged with rape. He wasn't charged with rape. He was charged with sexual abuse specifically because, as the Ecuadorian court said, there is no competent evidence of penetration, period. So to say that because there's some allegation from his—from her mother who heard it from the school, who supposedly heard it from the daughter, that is not competent evidence. And so this court would essentially be relying on incompetent evidence to send him back to Ecuador to be tried for sexual abuse, which doesn't recognize this. Wait, wait, wait. We can consider hearsay evidence, even though hearsay is not permissible in the foreign proceeding. We're allowed to consider that, right? First, I don't know whether it would be, but that doesn't mean that they couldn't prove it some other way. We know they can't prove it yet. What you're contemplating for a hearing like this is that the court is going to make evidentiary rulings on Ecuadorian law. No, they're making evidentiary rulings that have already been made by Ecuador. They're accepting the finding of Ecuador. I understand, Your Honor, that, for example, in a grand jury, hearsay is permissible, et cetera, et cetera, but that's because there's an assumption that at trial there will be competent evidence. No, no, no. That's because an extradition hearing is by design supposed to be really limited. It's not because we think that the bells and whistles of procedure in Ecuador are the same as here. It's because the inquiry is simply whether there's probable cause. Where, in fact, the defendant could be tried upon those charges, but the charge that he's being tried for in Ecuador would have nothing to do with penetration. It would exclude any evidence of penetration. And penetration is a non-issue in this case entirely because rape and sexual abuse are mutually exclusive crimes. So we're talking about an issue which we know will have total irrelevance in the country of Ecuador as the courts have already determined. Because, in your view, that is the purpose of a hearing like this, which is to determine what admissible evidence will be coming in and what admissible evidence will be— No, it's not to make that determination. That determination has been made. Well, that's what your expert is really offering. His whole purpose of testimony is to explain what evidence is coming in in Ecuador. No, actually, the primary purpose would be to reinforce the point that he is not being tried for anything concerning penetration in Ecuador. Right. It's your point, which is that by virtue of a charging decision in Ecuador, certain evidence would be precluded in that proceeding. It's not just that it would be precluded. It's just that the two crimes, rape and sexual abuse, are mutually exclusive of one another. Thank you, Your Honor. We'll take the matter under advisement.